## Case No. 16,320.

### UNITED STATES v. SMITH.

[3 Blatchf. 255.] 1

Circuit Court, S D. New York. Feb. 24, 1855.

CRIMINAL LAW—INSTRUCTIONS—NEW TRIAL—
SLAVE TRADE.

Where, on the trial of an indictment, founded on the slave-trade act of May 15, 1820 (3 Stat. 600), which charged the prisoner with being one of the ship's company of a vessel owned in whole or in part by a citizen or citizens of the United States, and also with being a citizen of the United States and one of the ship's company of a foreign vessel. the government began the trial by giving evidence tending to prove the purchase of the vessel by the prisoner from American owners of her, and the prisoner did not controvert that fact, or put in any evidence on that subject, but confined himself to proving that he was not a citizen of the United States: *Held*, that it was error in the court to submit to the jury the question as to whether the interest of such American owners in the vessel had passed to the prisoner by such purchase, but that the only question submitted to them should have been as to the citizenship of the prisoner; and that, as they found a general verdict of guilty, there must be a new trial.

 [Cited in Sparf v. U. S., 156 U. S. 175, 15 Sup. Ct. 321.]

This was an indictment against the defendant [James Smith], under the act of congress

¹ [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

passed May 15, 1820 (3 Stat. 600), upon a charge of having been engaged in the slave trade, in violation of the provisions of that act. It provides, that any citizen of the United States, being of the crew or ship's company of any foreign ship engaged in the slave trade, or any person whatever, being of the crew or ship's company of any ship owned in whole or in part, or navigated for, or in behalf of, any citizen or citizens of the United States, who shall be engaged in the slave trade, in the manner and with the intent specified in the fourth and fifth sections of the act, shall be adjudged a pirate, and, on conviction of the offence, shall suffer death. The indictment charged the offence under both branches of the act: (1) That the prisoner, being one of the ship's company of the brig Julia Moulton, owned in whole or in part by a citizen or citizens of the United States, &c., did piratically, &c., confine and detain five hundred negroes on board said vessel, &c., with intent, &c., contrary to the statute. (2) That the prisoner, being a citizen of the United States, and one of the ship's company of the brig Julia Moulton, the said brig being a foreign vessel engaged in the slave trade, did piratically, &c., detain, &c., five hundred negroes on board said vessel, with intent, &c. After conviction, the defendant moved for a new trial.

John McKeon, U. S. Dist. Atty.
Charles O'Conor, for defendant.

Before NELSON, Circuit Justice, and BETTS, District Judge.

NELSON, Circuit Justice. On the trial, evidence was given, on behalf of the government, of the purchase of the brig Julia Moulton by the prisoner, at Boston, from her American owners, previous to her equipment and fitting out at the port of New York for the voyage to the coast of Africa; also, that the ship's papers were taken out at the custom-house at Boston, and afterwards at New York, by him, or at his instance, and in his own name. The evidence was not entirely clear that the purchase of the vessel was made for himself, or that he had furnished the money that was paid for her. In the ship's papers, which were produced by the government, the prisoner was described as a citizen of the United States; and he took the usual custom-house oath that he was such citizen. The evidence was full, that the prisoner, as master of the vessel, sailed from the port of New York to the coast of Africa, took in a cargo of negroes, and thence sailed to the island of Cuba, where the cargo was landed and the ship burned by his orders. Considerable evidence was given on the part of the prisoner tending to show that he was a subject of the kingdom of Hanover, in which he was born, and not a citizen of the United States.

In submitting the case to the jury, the court stated, that the government must prove, ei-

ther that the prisoner, at the time he was engaged in the illegal traffic, was a citizen of the United States, or that the vessel which he commanded was owned, in whole or in part, by a citizen or citizens of the United States, in order to justify them in finding him guilty. And these two questions were accordingly left to the jury for their finding, after their attention was called to the evidence that had been given bearing upon them. The jury found a general verdict of guilty.

The prisoner's counsel now moves for a new trial, upon the ground, among others, that he was taken by surprise in the direction given to the case by the charge of the court, in submitting to the jury the question as to the national character of the vessel; or, to be more particular, the question whether the interest of the American owners in the vessel had passed to the prisoner by the purchase of her at Boston.

The argument of the counsel is, that the purchase of the vessel by the prisoner had been proved on behalf of the government; that, assuming, therefore, that it was not to be made a matter of controversy in the progress of the trial, but was to be taken as an admitted fact, he had omitted to examine witnesses and to produce evidence, which, if his attention had been turned to the point, or he had deemed it material, would have placed the fact beyond all reasonable doubt; and that, having taken it for granted, from the course of the trial, that the purchase and transfer of the vessel from the American owners passed from them and vested in the prisoner a complete title to the vessel, the counsel supposed that the only question in controversy, left in this part of the case, was the question of citizenship.

We are satisfied, on a review of the case, that these considerations, suggested by the counsel for the prisoner, are entitled to weight, and that the course of the trial may very well have misled him in respect to the point mentioned, in conducting the defence. The government, having begun the trial by giving evidence tending to prove the purchase of the vessel by the prisoner from her American owners, and having thus made that fact, whether material or not, a part of its case, so far as the prosecution was concerned, it was natural for the counsel for the prisoner to infer, that unless he himself chose to controvert it, it would be regarded as admitted, or, at least, not be a matter of controversy in the future progress of the trial. The somewhat imperfect state of the evidence in respect to this purchase, as given on the trial, led to the impression, at the time, that whatever might be our opinion as to the fact, the question was one that belonged to the jury, and it was submitted accordingly. We are satisfied, from the view already presented, that in this respect we were mistaken; and that, instead of submitting the

fact to the jury, as the government had made it a part of its case, and as the fact was not controverted by the prisoner, the court should have regarded it as undisputed, and have confined the question at issue to the citizenship of the prisoner. Not only was the view taken by the court calculated to mislead the counsel for the defence, but, we think, from the course of the trial, and from the evidence given on the part of the government, that there was error in submitting the question of the national character of the vessel to the jury at all, as a question open for their consideration.

The finding of guilty was general, and, as the national character of the vessel was submitted to the jury, their verdict may have been influenced by the consideration of that question. There must, therefore, be a new trial.